HON. EDWARD J. LEE City Attorney, Norwich
We acknowledge receipt of your letter inquiring whether the City of Norwich, which is divided into six wards for the purpose of electing city aldermen, has the power, by resolution, to alter the boundary lines of the six city wards in order to achieve numerical equivalency in each of the six wards. You enclosed a copy of a portion of the Norwich City Charter § 6, which reads as follows:
 "The Common Council shall have power, by resolution passed by a majority of its members, to change at any time the boundaries of the several wards of the city, but not to increase the number of wards; but such resolution shall be published in the official city newspaper once in each week for two (2) successive weeks after its passage."
We find that the same provision was contained in the original Charter of the City of Norwich, § 6, which was passed by the Legislature and became Chapter 34 of the Laws of 1914.
By telephone we were advised that the aldermen from the wards in the city are elected for staggered 4-year terms, as a result of which, three aldermen are elected in one odd numbered year for 4-year terms and two years later, in the next odd numbered year, the other three aldermen are elected for 4-year terms. We were also advised that the city is divided into two districts from each of which a supervisor is elected each odd numbered year for a two-year term.
Cities have the power under Municipal Home Rule Law § 10 to change their ward boundaries by local law subject to the limitation in Municipal Home Rule Law § 23, subdivision 2, paragraph h, that if the local law changes the boundaries of wards or other districts from which members of the county board of supervisors are chosen, the local law is subject to a mandatory referendum. We prepare this opinion upon the assumption that the change contemplated will not affect the boundaries of the two districts from which your city supervisors are chosen.
Municipal Home Rule Law § 50 provides, in part, as follows:
"§ 50. Legislative intent
* * *
 "2. There is hereby reserved to * * * the board of aldermen, common council, council, commission or other board or body of every city, * * * all the rights, privileges, powers and jurisdiction now conferred on it by law until such rights, privileges, powers or jurisdiction shall be abolished, transferred or changed by law.
 "3. It is not the intention of the legislature hereby to abolish or curtail any rights, privileges, powers or jurisdiction heretofore conferred upon or delegated to any local government or to any board, body or officer thereof, unless a contrary intention is clearly manifest from the express provisions of this chapter or by necessary intendment therefrom, or to restrict the powers of the legislature to pass laws regulating matters other than the property, affairs or government of local governments as distinguished from matters relating to their property, affairs or government."
Municipal Home Rule Law § 51 provides:
"§ 51. Liberal construction
 "This chapter shall be liberally construed. The powers herein granted shall be in addition to all other powers granted to local governments by other provisions of law. A permissive procedure authorized by this chapter shall not be deemed to be exclusive or to prohibit the use of any other procedure authorized by any state statute, charter or local law lawfully adopted, but shall be deemed an alternative thereto."
Similar provisions were contained in the former City Home Rule Law (a predecessor statute to the Municipal Home Rule Law) which was adopted after the enactment of the original Charter of the City of Norwich.
In our opinion, the provision in the City Charter of the City of Norwich is still effective insofar as it applies to aldermen, only, and the city may, by resolution, alter the boundary lines of the wards from which city aldermen are elected. The city may also make such change by local law pursuant to the provisions of Municipal Home Rule Law § 10 and if the local law also applies to supervisors, it is subject to a mandatory referendum.
A major procedural problem in making the change under either procedure is created by the staggered terms of the aldermen. If you take a map of the city and draw on that map the present ward boundaries and the proposed new ward boundaries, you will discover that after the first election on the new ward basis, and until the second election, staggered terms of office result in some residents of the city having multiple representation and some having no representation on the city council. This quite obviously would violate the Equal Protection Clauses contained in the Fourteenth Amendment to the Constitution of the United States and Article I, section 11 of the Constitution of the State of New York.
An existing term of office of elected alderman can not be reduced by local law. It is our opinion that the only way to resolve this problem is to pass a local law fixing the terms of councilmen to be elected in 1977 at two years so that in 1979, all six councilmen will be elected from the new city wards. Future terms should be fixed by the local law so that the terms of all aldermen will continue to expire simultaneously or a complicated timetable of long and short terms will have to be provided so that after each decennial census there will be a year in which all aldermanic terms expire at the same time so as to allow adjustment of ward boundaries to equalize the ward populations.